BARBARA A. LAWLESS - Bar # 53195
THERESE M. LAWLESS - Bar # 127341
LAWLESS & LAWLESS
354 Pine Street, Fourth Floor
San Francisco, CA 94104
Telephone: (415) 391-7555
Facsimile: (415) 391-4228

Attorneys for Plaintiff
APLONDA BRIDGEFORTH

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APLONDA BRIDGEFORTH,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>AT&T MOBILITY WIRELESS OPERATIONS HOLDINGS INC., and DOES ONE through FIFTY, inclusive,<br><br>　　　　Defendants. | Docket No.<br><br>**COMPLAINT – EMPLOYMENT DISCRIMINATION BASED ON SEX/GENDER, RACE, AND AGE; FAILURE TO PREVENT DISCRIMINATION; RETALIATION FOR MAKING PROTECTED COMPLAINTS**<br><br>**JURY TRIAL REQUESTED** |

I.

**NATURE OF THE ACTION**

1. This action is brought by Plaintiff APLONDA BRIDGEFORTH (hereafter "BRIDGEFORTH"), RETAIL STORE MANAGER III, employed by AT&T MOBILITY WIRELESS OPERATIONS HOLDINGS INC. (hereafter "Defendant" or "AT&T") for discrimination based on gender, race, age and retaliation to wit: demotion, wrongful discharge, and hostile work environment.

2. This action is brought under the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 *et seq.* as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1991) (Title VII), and the Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.* Plaintiff seeks back pay, front pay, and compensatory damages, as well as declaratory judgment and injunction to restrain defendant employer from committing prohibited personnel practices, policies, customs and usages, from

discriminating and retaliating against plaintiff and other employees of AT&T based on discrimination based on gender, age, race and/or opposition to unlawful discrimination and retaliation. Plaintiff seeks injunctive relief requiring defendant employer to take affirmative and effective steps to remove and otherwise discipline managers who have failed to comply with Title VII. Plaintiff seeks injunctive relief requiring the defendant employer to take specific actions designed, implemented, and confirmed by qualified consultants to ensure that all supervisory employees are adequately trained to identify, investigate and stop situations and complaints.

## II.

## JURISDICTION AND VENUE

3. The jurisdiction of the Court is based upon the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 *et seq.*, 28 U.S.C. §§ 1331, 1337, and 1343, which grant district courts jurisdiction over actions alleging unlawful and discriminatory employment practices and provides for judicial review of cases involving discrimination based on gender, race/national origin, age and retaliation. The unlawful practices alleged in this complaint occurred in the county of Sacramento, which is situated in the Eastern District of California.

## III.

## PLAINTIFF

4. Plaintiff APLONDA BRIDGEFORTH is an African-American, 54-year-old female citizen of the United States who resides in Pittsburg, California and was employed by AT&T MOBILITY WIRELESS OPERATIONS HOLDINGS INC. in California for over 16 years. She was rated satisfactory or better in her yearly performance reviews at all times before she was retaliated against, as alleged herein.

## IV.

## DEFENDANT

5. At the pertinent times mentioned in this complaint, defendant AT&T MOBILITY WIRELESS OPERATIONS HOLDINGS INC. ("AT&T") was a corporation incorporated in the State of Delaware.

6. Plaintiff is ignorant of the true names or capacities of the defendants sued here under the

fictitious names DOE ONE through DOE FIFTY, inclusive. Plaintiff is informed and believes that each of DOE defendants was responsible in some manner for the occurrences and injuries alleged in this complaint.

## V.

## EXHAUSTION OF REMEDIES

7. Plaintiff BRIDGEFORTH filed EEOC charge number 555-2011-00246 alleging sex/gender discrimination, race discrimination, and age discrimination with the Equal Employment Opportunity Commission (EEOC) on or about February 14, 2011. While being supervised by a younger and less-experienced white male supervisor, Plaintiff was informed that her position as a Store Manager II for defendant was ending on or about December 14, 2010 due to a restructure and/or company downsizing. Plaintiff was immediately replaced in this position by a younger and less-experienced white male. Other younger, non-African-American, and/or male employees whose jobs ended around the same time were given special projects to work on while looking for other positions, whereas BRIDGEFORTH was forced to clean out her desk and walked out of the building immediately. Plaintiff began working in a demoted position which she was offered shortly after filing her charge with the EEOC. The EEOC issued a Notice of Suit Rights for charge number 555-2011-00246 on or about April 26, 2016.

8. Plaintiff BRIDGEFORTH filed EEOC charge number 555-2015-0466 alleging retaliation in addition to discrimination on the bases of sex/gender, race, and age in or about April 2015. Since the date of Plaintiff's 2011 EEOC filing, Plaintiff had been subjected to retaliation in the form of being assigned to less desirable and underperforming stores, being unwarrantedly disciplined for failing to meet her younger white male supervisor's unrealistic expectations, and being terminated. Plaintiff was falsely accused of using one of defendant's company computers to access her personal records in violation of company property, and suspended for this unfounded accusation. At the time of Plaintiff's termination, she was the only African-American manager under her supervisor, who was a younger white male, and she was one of the oldest store managers in the company. Plaintiff was immediately replaced by a younger and less-experienced white male. The EEOC issued a Notice of Suit Rights for charge number 555-2015-0466 on or

about April 26, 2016.

## VI.

## STATEMENT OF FACTS

9. Plaintiff BRIDGEFORTH is a member of a protected group based on her sex (female), race (African-American), age (54) and based on her having been retaliated against for protected activity (filing EEOC complaints and opposing unlawful practices).

10. Plaintiff BRIDGEFORTH fully exhausted her administrative remedies for EEOC charge numbers 555-2011-00246 and 555-2015-0466.

11. Plaintiff BRIDGEFORTH is a 54 year-old, African-American female who worked for AT&T for over 16 years starting in early 1998. Plaintiff was originally hired as a store manager. Because Plaintiff was a productive and successful employee, she was promoted from store manager to Area Retail Sales Manager approximately one year after she was hired. As an Area Retail Sales Manager, BRIDGEFORTH was responsible for more than five (5) stores in Citrus Heights, Roseville, Stockton, and Modesto. Plaintiff received raises and positive performance reviews in recognition of her excellent job performance.

12. Due to a store merger, BRIDGEFORTH's Area Retail Sales Manager position was eliminated in or about 2005. Thereafter she became the Store Manager for AT&T's Citrus Heights retail store, and was managed by a younger white male who she had trained. BRIDGEFORTH continued to receive raises and positive performance reviews while she remained in this position until 2007.

13. In or about 2007, BRIDGEFORTH was transferred back to a Store Manager II position at AT&T's Natomas Crossing retail store in Sacramento, California. In this position, BRIDGEFORTH continued to meet or exceed expectations. For example, she won AT&T's Summit Award for achieving the status of top 10% of producers for the company nationwide in multiple years, including 2010. BRIDGEFORTH also received bonuses including paid trips and an iPad, in addition to outstanding performance reviews in recognition of her excellent job performance.

14. On or about December 14, 2010, BRIDGEFORTH was abruptly terminated by Defendant.

Defendant labeled her termination a "surplus" and told her it was due to company reorganization and downsizing. Other younger, non-African-American employees who had been subject to the "surplus" were given other roles in the company and remained on the payroll for several months. Defendant immediately replaced BRIDGEFORTH with a younger white male employee who was less experienced and had less education, who she had trained during her time as the Natomas Crossing store manager.

15.   Plaintiff BRIDGEFORTH was told that defendant AT&T's decision to terminate her from the Store Manager II position was based on four criteria: (1) longevity with the company, (2) performance, (3) ability to excel, and (4) education. At that time, Plaintiff had worked for defendant AT&T for approximately 13 years, which was much longer than her replacement; she had consistently received excellent performance evaluations; she had successfully adapted to different roles within the company thereby showing her ability to excel and her proven excellence in her career at AT&T; and plaintiff had both a bachelor's and a master's degree, which her younger white male replacement did not.

16.   Plaintiff BRIDGEFORTH filed claims for gender/sex, race, and age discrimination with the federal Equal Employment Opportunity Commission ("EEOC"), which were concurrently filed with the California Department of Fair Employment and Housing ("DFEH") on or about February 14, 2011.

17.   In or about February 2011, Defendant offered BRIDGEFORTH a demoted position as a Store Manager I at AT&T's lowest performing retail store in the district, which was located in Auburn, California. BRIDGEFORTH accepted the position and successfully increased sales in the store. After BRIDGEFORTH became the store manager, the Auburn AT&T retail store scored top sales scores in several key metrics and received accolades from AT&T's District Manager, Area Retail Sales Manager, and Vice President General Manager. She was manager by a younger and less-experienced white male in this position.

18.   In or about May 2013, BRIDGEFORTH learned that her Auburn retail store was being closed from someone who was not an employee of AT&T. When BRIDGEFORTH asked AT&T's District Manager and Area Retail Sales Manager about the closure, they confirmed it, but

both assured BRIDGEFORTH that she had done an excellent job and the closure was not a negative reflection on her.

19. Shortly thereafter, BRIDGEFORTH was offered and accepted a position as a Store Manager III at AT&T's Sacramento Downtown Plaza location. At the time she accepted the position, BRIDGEFORTH had been informed and believed that the store was going to be relocated in the imminent future, and that she would be relocated as well. Plaintiff relied on this information when she accepted the job. The store had a history of poor sales performance as it was located right next to a jail and frequented by recently released inmates. The store also had a history of poor employee attendance and performance, which was one of several concerns BRIDGEFORTH raised to her supervisor, who was a younger and less-qualified white male. In addition, there had always been a relatively small amount of foot traffic at this location, and the months leading up to the planned closure and transfer were no exception. As time drew closer to the store's scheduled close date, all of the employees at BRIDGEFORTH's store were relocated, except for BRIDGEFORTH. Shortly after BRIDGEFORTH took her assistant store manager to visit the alleged relocation site, BRIDGEFORTH's younger and less-experienced white male supervisor informed her that the Sacramento Downtown Plaza store was being permanently closed; it would not be relocated. Plaintiff was again told that she was a "surplus employee."

20. Under AT&T company rules for "surplused" employees, BRIDGEFORTH should have been given priority for job openings in other AT&T stores following her store's closure. A Store Sales Manager III position opened up at the Citrus Heights store, BRIDGEFORTH applied for it, but she was never even given the opportunity to interview for the job. Plaintiff had previously worked in and successfully managed the Citrus Heights store. A younger and less-qualified non-African-American male was hired to manage that store.

21. BRIDGEFORTH was eventually transferred to a Store Sales Manager III position at AT&T's Fair Oaks Boulevard location, which historically had a very bad sales record. Here, BRIDGEFORTH encountered the same problems with low foot traffic as well as poor employee attendance and performance. Plaintiff's Area Manager, Brian Mulrooney – a younger white male who she had trained – would visit her at this location multiple times per week and would take

-6-
COMPLAINT – EMPLOYMENT DISCRIMINATION BASED ON GENDER, RACE, AND AGE; FAILURE TO PREVENT DISCRIMINATION; RETALIATION FOR MAKING PROTECTED COMPLAINTS

specific employees out of the store to speak with them outside of BRIDGEFORTH's presence. During these visits he would also review video of her activity for hours. BRIDGEFORTH learned from other store managers in the district that the District Manager was not having similar secret conversations with employees at their stores. Plaintiff was being set up for termination.

22.   In or about August 2014, BRIDGEFORTH was on vacation. When she returned to work, she was told to report immediately to the corporate office. Once there, BRIDGEFORTH was told by her District Manager and the Regional Performance Manager that she was being suspended from work while an investigation into her conduct took place. BRIDGEFORTH was falsely accused of having accessed her personal AT&T account from a store computer in violation of AT&T's Code of Business Conduct. BRIDGEFORTH vehemently denied the false allegation and asked to see their evidence supporting their accusation. No evidence was ever shown to her, because there was and is none. The Regional Performance Manager instead showed BRIDGEFORTH a piece of paper with a string of numbers on it, and claimed it showed that the store computer she had used that day had accessed her account. BRIDGEFORTH told the Regional Performance Manager that her Assistant Store Manager had accessed her account to execute an accessory exchange, which was not a violation of AT&T policy. The Area Manager said an employee witnessed BRIDGEFORTH herself access her own account from the store computer. BRIDGEFORTH was suspended from work for one week. The following week, BRIDGEFORTH received a call from her supervisor Brian Mulrooney asking if she was ready to come back to work to "rock and roll." BRIDGEFORTH responded affirmatively.

23.   BRIDGEFORTH later learned that the alleged employee witness to her allegedly using a store computer to access her personal account was a young white male who she had put on a performance improvement plan just a few weeks earlier.

24.   One of BRIDGEFORTH's employees observed several co-workers – including the person BRIDGEFORTH had recently put on a performance improvement plan – gathered together talking about how they needed to "get on the same page" and "organize their statements about how they were going to get rid of [BRIDGEFORTH]."

25.   When BRIDGEFORTH returned to work, she learned that the District Manager had been

COMPLAINT – EMPLOYMENT DISCRIMINATION BASED ON GENDER, RACE, AND AGE; FAILURE TO PREVENT DISCRIMINATION; RETALIATION FOR MAKING PROTECTED COMPLAINTS

interviewing her employees about her during her absence.

26. Approximately two weeks after she returned to work from her suspension, BRIDGEFORTH was terminated on or about September 6, 2014. She requested her personnel file and was given some, but not all, of it. The company failed to pay her the vacation time owed to her at the time of termination.

27. BRIDGEFORTH was 4.5 years from retirement at the time of her termination and one of the oldest Store Managers employed by Defendant company. Plaintiff was also the only African-American Store Manager under her supervisor, who was a younger white male she had previously managed and trained.

28. Plaintiff BRIDGEFORTH filed a claim alleging retaliation as well as ongoing age, race, and gender discrimination with the EEOC, which was concurrently filed with the California Department of Fair Employment and Housing ("DFEH") in or about April 2015.

## VII.

## CAUSES OF ACTION

### (1) Sex Discrimination – Disparate Treatment in Violation of Title VII, Civil Rights Act of 1964 as Amended, 42 U.S.C. § 2000e

29. Paragraphs 1 through 28 above are hereby incorporated by reference as though fully set forth in this claim.

30. By allowing AT&T's District/Area Retail Sales Manager/Store Managers to perpetrate sex-based discrimination against Plaintiff, who was a female employee, and unlawfully favor male employees, Defendants caused and/or permitted sex-based Title VII violations; thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 2000e-5(g) and § 1981a.

31. Defendants caused and/or permitted sex-based discrimination by failing or refusing to reassign Plaintiff to a position comparable to her experience and performance record during Defendants' alleged reorganization in 2005 in violation of 42 U.S.C. § 2000e-2. Prior to reorganization, Plaintiff was an Area Manager overseeing five stores. When Plaintiff's position was eliminated, Defendants reassigned Plaintiff to a lower position as a Store Manager for the Citrus Heights location. Defendants also reassigned a male, whom Plaintiff had trained, to a

position supervising Plaintiff. Prior to the merger, Plaintiff received raises and positive performance reviews. Thus, she exceeded satisfactory performance expectations, and demonstrated the requisite experience and skill for the position that was given to a less-experienced male who was Plaintiff's former subordinate.

32. Defendants caused and or permitted sex-based discrimination by failing or refusing to reassign Plaintiff to another role in the company when she was designated "surplus" and subsequently terminated from her position as Store Manager II at the Natomas Crossing location in 2010. Other less qualified and less senior male employees designated "surplus" were provided other roles within the company. Prior to Plaintiff's "surplus" termination, Plaintiff ranked among the top 10% of producers for the company nationwide. Plaintiff also had received bonuses in the forms of paid trips and an iPad, as well as outstanding performance reviews for her excellent performance. Upon termination, Plaintiff's Store Manager II position was filled by a less-experienced and less-educated male.

33. Defendants caused and/or permitted sex-based discrimination by regularly assigning Plaintiff to objectively undesirable locations. When Plaintiff was assigned to the Auburn location, it was the lowest performing AT&T store in the district. The Sacramento Downtown Plaza location was next to a jail, was known for low foot-traffic, and historically underperformed. The Fair Oaks location also had low foot-traffic, poor employee attendance, and a history of low sales performance. Plaintiff was even denied an opportunity to interview for the Store Manager III position at the Citrus Heights location – a more desirable location. This position was instead given to a younger and less-experienced, non-African-American male. When reassignment and relocations were imminent, other males were assigned to more desirable locations.

34. Defendants caused and/or permitted sex-based discrimination by unnecessarily targeting Plaintiff's Fair Oaks store. Defendants conducted bi-weekly observations of Plaintiff's store, and interviewed her employees outside of Plaintiff's presence. Defendants did not regularly conduct observations of other locations in the district that were managed by males, nor secretly interview male managers' employees.

35. Defendants caused and/or permitted sex-based discrimination by manufacturing

misconduct to support Plaintiff's suspension and eventual termination. Defendants falsely accused Plaintiff of accessing her personal account from a store computer, and then refused to give Plaintiff evidence supporting their allegation. Defendants unreasonably relied on a witness who was an employee Plaintiff had recently placed on a performance improvement plan.

36.    As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer actual damages including but not limited to back pay, front pay, and loss of benefits.

37.    As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer emotional distress.

## (2) Sex Discrimination – Disparate Impact in Violation of Title VII, Civil Rights Act of 1964 as Amended, 42 U.S.C. § 2000e

38.    Paragraphs 1 through 28 above are hereby incorporated by reference as though fully set forth in this claim.

39.    By allowing AT&T District/Area Retail Sales Manager/Store Managers to misuse and exploit unintentionally discriminatory employment "patterns or practices," Defendants caused and/or permitted a Title VII disparate impact violation. The practices and policies regarding criteria for hiring, promotion, "surplus," and termination decisions utilized by Defendants had a disparate impact on female employees.

40.    Defendants relied on a subjective system ignoring job-related and performance-based criteria when making promotion, reassignment, and termination decisions. Defendants continually created artificial barriers that prevented Plaintiff from acquiring a position objectively commensurate with her experience, performance, competence and skill. Consequently, Defendants manufactured adverse employment actions that produced a disparate impact on female employees.

41.    Defendants caused and/or permitted District/Area Retail Sales Manager/Store Managers to bring about adverse employment actions for Plaintiff including: demotions, reassignments to objectively undesirable locations, unsubstantiated disciplinary action, and terminations. Concurrently, District/Area Retail Sales Manager/Store Managers generously favored males when

COMPLAINT – EMPLOYMENT DISCRIMINATION BASED ON GENDER, RACE, AND AGE; FAILURE TO PREVENT DISCRIMINATION; RETALIATION FOR MAKING PROTECTED COMPLAINTS

engaging in promotion and reassignment practices.

42. As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer actual damages including but not limited to back pay, front pay, and loss of benefits.

43. As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer emotional distress.

### (3) Race Discrimination – Disparate Treatment in Violation of Title VII, Civil Rights Act of 1964 as Amended, 42 U.S.C. § 2000e

44. Paragraphs 1 through 28 above are hereby incorporated by reference as though fully set forth in this claim.

45. By allowing AT&T's District/Area Retail Sales Manager/Store Managers to perpetrate race-based discrimination against Plaintiff, who was an African-American employee, and unlawfully favor non-African-American employees, Defendants caused and/or permitted race-based Title VII violations; thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 2000e-5(g) and § 1981a.

46. Defendants caused and/or permitted race-based discrimination by failing or refusing to reassign Plaintiff to a position comparable to her experience and performance record during Defendants' alleged reorganization in 2005 in violation of 42 U.S.C. § 2000e-2. Prior to reorganization, Plaintiff was an Area Manager overseeing five stores. When Plaintiff's position was eliminated, Defendants reassigned Plaintiff to a lower position as a Store Manager for the Citrus Heights location. Defendants also reassigned non-African-American, whom Plaintiff had trained, to a position supervising Plaintiff. Prior to the merger, Plaintiff received raises and positive performance reviews. Thus, she exceeded satisfactory performance expectations, and demonstrated the requisite experience and skill for the position that was given to a less-experienced non-African-American person who was Plaintiff's former subordinate.

47. Defendants caused and or permitted race-based discrimination by failing or refusing to reassign Plaintiff to another role in the company when she was designated "surplus" and subsequently terminated from her position as Store Manager II at the Natomas Crossing location

in 2010. Other less qualified and less senior non-African-American employees designated "surplus" were provided other roles within the company. Prior to Plaintiff's "surplus" termination, Plaintiff ranked among the top 10% of producers for the company nationwide. Plaintiff also had received bonuses in the forms of paid trips and an iPad, as well as outstanding performance reviews for her excellent performance. Upon termination, Plaintiff's Store Manager II position was filled by a less-experienced and less-educated non-African-American person.

48. Defendants caused and/or permitted race-based discrimination by regularly assigning Plaintiff to objectively undesirable locations. When Plaintiff was assigned to the Auburn location, it was the lowest performing AT&T store in the district. The Sacramento Downtown Plaza location was next to a jail, was known for low foot-traffic, and historically underperformed. The Fair Oaks location also had low foot-traffic, poor employee attendance, and a history of low sales performance. Plaintiff was even denied an opportunity to interview for the Store Manager III position at the Citrus Heights location – a more desirable location. This position was instead given to a younger and less-experienced, non-African-American male. When reassignment and relocations were imminent, other non-African-American employees were assigned to more desirable locations.

49. Defendants caused and/or permitted race-based discrimination by unnecessarily targeting Plaintiff's Fair Oaks store. Defendants conducted bi-weekly observations of Plaintiff's store, and interviewed her employees outside of Plaintiff's presence. Defendants did not regularly conduct observations of other locations in the district that were managed by non-African-American people, nor secretly interview non-African-American managers' employees.

50. Defendants caused and/or permitted race-based discrimination by manufacturing misconduct to support Plaintiff's suspension and eventual termination. Defendants falsely accused Plaintiff of accessing her personal account from a store computer, and then refused to give Plaintiff evidence supporting their allegation. Defendants unreasonably relied on a witness who was an employee Plaintiff had recently placed on a performance improvement plan.

51. As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer actual damages including but not limited to back pay, front pay, and loss

of benefits.

52. As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer emotional distress.

### (4) Race Discrimination – Disparate Impact in Violation of Title VII, Civil Rights Act of 1964 as Amended, 42 U.S.C. § 2000e

53. Paragraphs 1 through 28 above are hereby incorporated by reference as though fully set forth in this claim.

54. By allowing AT&T District/Area Retail Sales Manager/Store Managers to misuse and exploit unintentionally discriminatory employment "patterns or practices," Defendants caused and/or permitted a Title VII disparate impact violation. The practices and policies regarding criteria for hiring, promotion, "surplus," and termination decisions utilized by Defendants had a disparate impact on African-American employees.

55. Defendants relied on a subjective system ignoring job-related and performance-based criteria when making promotion, reassignment, and termination decisions. Defendants continually created artificial barriers that prevented Plaintiff from acquiring a position objectively commensurate with her experience, performance, competence and skill. Consequently, Defendants manufactured adverse employment actions that produced a disparate impact on African-American employees.

56. Defendants caused and/or permitted District/Area Retail Sales Manager/Store Managers to bring about adverse employment actions for Plaintiff including: demotions, reassignments to objectively undesirable locations, unsubstantiated disciplinary action, and terminations. Concurrently, District/Area Retail Sales Manager/Store Managers generously favored non-African-American employees when engaging in promotion and reassignment practices.

57. As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer actual damages including but not limited to back pay, front pay, and loss of benefits.

58. As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer emotional distress.

## (5) Age Discrimination – Disparate Treatment in Violation of Title VII, Civil Rights Act of 1964 as Amended, 42 U.S.C. § 2000e

59.     Paragraphs 1 through 28 above are hereby incorporated by reference as though fully set forth in this claim.

60.     By allowing AT&T's District/Area Retail Sales Manager/Store Managers to perpetrate age-based discrimination against Plaintiff, who was an older employee, and unlawfully favor younger employees, Defendants caused and/or permitted age-based Title VII violations; thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 2000e-5(g) and § 1981a.

61.     Defendants caused and/or permitted age-based discrimination by failing or refusing to reassign Plaintiff to a position comparable to her experience and performance record during Defendants' alleged reorganization in 2005 in violation of 42 U.S.C. § 2000e-2. Prior to reorganization, Plaintiff was an Area Manager overseeing five stores. When Plaintiff's position was eliminated, Defendants reassigned Plaintiff to a lower position as a Store Manager for the Citrus Heights location. Defendants also reassigned a younger and less-experienced employee, whom Plaintiff had trained, to a position supervising Plaintiff. Prior to the merger, Plaintiff received raises and positive performance reviews. Thus, she exceeded satisfactory performance expectations, and demonstrated the requisite experience and skill for the position that was given to a younger and less-experienced employee who was Plaintiff's former subordinate.

62.     Defendants caused and or permitted age-based discrimination by failing or refusing to reassign Plaintiff to another role in the company when she was designated "surplus" and subsequently terminated from her position as Store Manager II at the Natomas Crossing location in 2010. Other less qualified and less senior younger employees designated "surplus" were provided other roles within the company. Prior to Plaintiff's "surplus" termination, Plaintiff ranked among the top 10% of producers for the company nationwide. Plaintiff also had received bonuses in the forms of paid trips and an iPad, as well as outstanding performance reviews for her excellent performance. Upon termination, Plaintiff's Store Manager II position was filled by a less-experienced and less-educated younger employee.

63.     Defendants caused and/or permitted age-based discrimination by regularly assigning

-14-
COMPLAINT – EMPLOYMENT DISCRIMINATION BASED ON GENDER, RACE, AND AGE; FAILURE TO PREVENT DISCRIMINATION; RETALIATION FOR MAKING PROTECTED COMPLAINTS

Plaintiff to objectively undesirable locations. When Plaintiff was assigned to the Auburn location, it was the lowest performing AT&T store in the district. The Sacramento Downtown Plaza location was next to a jail, was known for low foot-traffic, and historically underperformed. The Fair Oaks location also had low foot-traffic, poor employee attendance, and a history of low sales performance. Plaintiff was even denied an opportunity to interview for the Store Manager III position at the Citrus Heights location – a more desirable location. This position was instead given to a younger and less-experienced, non-African-American male. When reassignment and relocations were imminent, other younger employees were assigned to more desirable locations.

64. Defendants caused and/or permitted age-based discrimination by unnecessarily targeting Plaintiff's Fair Oaks store. Defendants conducted bi-weekly observations of Plaintiff's store, and interviewed her employees outside of Plaintiff's presence. Defendants did not regularly conduct observations of other locations in the district that were managed by younger persons, nor secretly interview younger managers' employees.

65. Defendants caused and/or permitted age-based discrimination by manufacturing misconduct to support Plaintiff's suspension and eventual termination. Defendants falsely accused Plaintiff of accessing her personal account from a store computer, and then refused to give Plaintiff evidence supporting their allegation. Defendants unreasonably relied on a witness who was an employee Plaintiff had recently placed on a performance improvement plan.

66. As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer actual damages including but not limited to back pay, front pay, and loss of benefits.

67. As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer emotional distress.

### (6) Age Discrimination – Disparate Impact in Violation of
### Title VII, Civil Rights Act of 1964 as Amended, 42 U.S.C. § 2000e

68. Paragraphs 1 through 28 above are hereby incorporated by reference as though fully set forth in this claim.

69. By allowing AT&T District/Area Retail Sales Manager/Store Managers to misuse and

exploit unintentionally discriminatory employment "patterns or practices," Defendants caused and/or permitted a Title VII disparate impact violation. The practices and policies regarding criteria for hiring, promotion, "surplus," and termination decisions utilized by Defendants had a disparate impact on older employees.

70. Defendants relied on a subjective system ignoring job-related and performance-based criteria when making promotion, reassignment, and termination decisions. Defendants continually created artificial barriers that prevented Plaintiff from acquiring a position objectively commensurate with her experience, performance, competence and skill. Consequently, Defendants manufactured adverse employment actions that produced a disparate impact on older employees.

71. Defendants caused and/or permitted District/Area Retail Sales Manager/Store Managers to bring about adverse employment actions for Plaintiff including: demotions, reassignments to objectively undesirable locations, unsubstantiated disciplinary action, and terminations. Concurrently, District/Area Retail Sales Manager/Store Managers generously favored younger employees when engaging in promotion and reassignment practices.

72. As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer actual damages including but not limited to back pay, front pay, and loss of benefits.

73. As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer emotional distress.

### (7) Failure to Prevent Discrimination in Violation of Title VII and California Government Code § 12940(k)

74. Plaintiff hereby incorporates by reference Paragraphs 1 through 73 of this Complaint as if fully set forth herein, and for a cause of action alleges as follows:

75. At all times mentioned herein, Defendants had an obligation under Title VII and under California Government Code § 12940(k) to investigate and prevent discrimination on the bases of gender, race, and age in their workplaces.

76. In or about February 2011, Plaintiff filed a complaint with the EEOC, which was dual-filed

COMPLAINT – EMPLOYMENT DISCRIMINATION BASED ON GENDER, RACE, AND AGE; FAILURE TO PREVENT DISCRIMINATION; RETALIATION FOR MAKING PROTECTED COMPLAINTS

with the California DFEH, alleging discrimination on the bases of sex, race, and age. This complaint was then served on Defendant.

77. Defendants failed to take the reasonable steps necessary to prevent discrimination from occurring with respect to Plaintiff. Further, Defendants failed to investigate Plaintiff's complaints and/or official charge of discrimination. Any investigations that did take place were insufficient and self-serving.

78. As a result, Defendants failed to provide Plaintiff equal employment opportunities. Such unequal treatment violates Plaintiff's right to be free from such discrimination under Title VII and California Government Code § 12940 et seq.

79. As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer actual damages including but not limited to back pay, front pay, and loss of benefits.

80. As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer emotional distress.

### (8) Unlawful Retaliation – Title VII, Civil Rights Act of 1964 as Amended, 42 U.S.C. § 2000e

81. Plaintiff hereby incorporates by reference Paragraphs 1 through 28 of this Complaint as if fully set forth herein, and for a cause of action alleges as follows:

82. At all times mentioned herein, federal law prohibiting retaliation for participating in protected activity - Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e-16 et seq. - was in full force and effect and fully binding upon AT&T. Plaintiff was a member of a group protected by that statute, in particular § 2000e-3(a), prohibiting retaliation for opposing practices forbidden under Title VII of the Civil Rights Act of 1964.

83. Defendants engaged in an unfair employment practice by unlawfully retaliating against Plaintiff because she sought to assert her rights to be free from discrimination based on her gender, race, and age in a statutorily protect activity as she complained about said discrimination in or about February 2011 by filing a complaint with the EEOC.

84. Defendant AT&T was aware of Plaintiff BRIDGEFORTH's opposition to illegal practices.

85. The demotion, the persistent relegation to undesirable store locations, the suspension from work, and the termination constitute retaliation for opposing practices forbidden under Title VII of the Civil Rights Act of 1964.

86. As a direct, foreseeable, and proximate result of AT&T's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in compensation and other employment benefits, and has incurred other economic losses including but not limited to lost income and benefits, including retirement benefits, front and back pay with interest, and will continue to suffer pecuniary losses, and has incurred other expenses, all to her pecuniary loss in an amount to be proven at trial, together with prejudgment interest.

87. As further direct and proximate result of the retaliatory conduct, BRIDGEFORTH has directly and legally been caused to suffer actual damages in the form of severe emotional mental pain, suffering, anguish, humiliation, embarrassment, fear and anxiety about her future, anger, shock, upset, loss of sleep, and loss of enjoyment in her life. Plaintiff is therefore entitled to an award of non-pecuniary losses in an amount to be proven at trial, together with prejudgment interest.

88. AT&T committed the acts set forth in this complaint despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights to be free from retaliation. Plaintiff is thus entitled to recover punitive damages from AT&T in an amount according to proof.

89. Plaintiff is entitled to an award of attorneys' fees and costs and expert fees pursuant to 42 U.S.C. § 2000e-5, and for appropriate injunctive and equitable relief.

## VIII.
## PRAYER FOR RELIEF

WHEREFORE, plaintiff APLONDA BRIDGEFORTH, respectfully prays that this Honorable Court grant the following relief:

1. For such damages, including back pay, front pay and benefits, including but, not limited to, loss of contributions to Plaintiff's pension plans and 401 (k) plan, overtime

compensation as Plaintiff is entitled to under Title VII of the Civil Rights Act and the Rehabilitation Act;

2. For other and further damages, including compensatory damages for Plaintiff's emotional distress, as may be proven at trial;

3. For an order commanding Defendants and each of them to cease and desist from any employment practice which discriminates against Plaintiff or others in retaliation against the person because s/he complained about such discrimination;

4. For an award of costs of suit including reasonable attorney's fees, including fees under 29 U.S.C. § 216(b); and

5. For such other relief as the Court may consider just and proper.

Dated: July 20, 2016

LAWLESS & LAWLESS

By: _____
Barbara A. Lawless
Therese M. Lawless
Attorneys for Plaintiff

## JURY TRIAL DEMANDED

Plaintiff demands trial of all issues by jury.

Dated: July 20, 2016

LAWLESS & LAWLESS

by _____
Barbara A. Lawless
Therese M. Lawless
Attorneys for Plaintiff

COMPLAINT – EMPLOYMENT DISCRIMINATION BASED ON GENDER, RACE, AND AGE; FAILURE TO PREVENT DISCRIMINATION; RETALIATION FOR MAKING PROTECTED COMPLAINTS